Good morning, Your Honors. May it please the Court. My name is Stephen Rosenberg. I represent the appellants of the O'Shea family who are beneficiaries of the pension plan. The initial starting point on this case is a problem with the standard of review applied by the Court under ERISA at the district court level. In essence, the district court made the same mistake that UPS defendants make in their briefs to this Court, which is that the Court transposed the standards of review that govern factual determination by an administrator with those that govern the Court's review of plan interpretation decisions by the plan administrator under ERISA. As this Court, I think, has noted most recently, there's limited jurisprudence in this circuit on the question of how an administrator is to interpret a disputed plan term. There's plenty of jurisprudence on how you interpret factual decisions against which is applied an undisputed plan term that everyone agrees upon. Where you have here the situation where the dispute is over what is the meaning of a plan term that is not plain and does not expressly address the situation, this circuit has applied a sort of contractual based standard of looking at the actual language used and the surrounding circumstances if there's any question as to what the settler's intent was and meaning was to interpret the language and determine what it meant. And that's consistent with, as we explained in our brief, with what other circuits have done, which is that under trust law, plan interpretation issues are really a question of getting at the settler's intent. What did the settler mean by the language of the plan that's at issue? When it's clear on the plan language, then there's no issue. You read it, that tells you what the settler intended. But here you have plan language that doesn't tell you. It tells you what happens in other circumstances, but it doesn't address the factual circumstances here in this instance. And that requires first looking under this circuit's jurisprudence, looking at the language, and under the Smart Case and some other jurisprudence, if that doesn't tell you what the settler intended in the language, looking at the surrounding circumstances, the surrounding evidence of intent. Now, there were two plan terms that the court referenced to find that Mr. O'Shea's beneficiaries were not entitled to the 120 guaranteed annuity payments. One of them is section 5.6 of the plan. Now, it's our position that the only provision the court at the district level, and also this court, can consider is whether section 5.6 barred the payment. Now, section 5.6. Well, let me, I think I understand your point, but I want to make sure I do. If there is other language in the plan, or the SPD, which supports the conclusion which the plan purported to draw from this one reference, may those other provisions be considered in determining, in effect, the reasonableness of the administrator's interpretation? Yes. It's our view that when the plan language isn't clear, all of the surrounding documentation, both in favor of the beneficiary's interpretation and whatever language may reflect that UPS's  Right. But may, when UPS cites only one provision, but there are other provisions that have the same evidentiary tendency, that supports the conclusion that the administrator drew from that one provision, may we on review of the reasonableness of the ultimate conclusion consider those other provisions as well as the one that the plan administrator cited? I understand your question, Your Honor. No, the court may not. Whereas here, the use of those other provisions and UPS's failure to raise it during the administrative appeal process has prejudiced the participants. The other provisions that the court, the district court, focused on, section 5.4, and so does UPS, were never raised below. Here, that section 5.4 never addresses the fact pattern here. It says only two things. It says, if you pick a single life annuity with 120 guaranteed payments, you're guaranteed, or your beneficiaries are guaranteed 120 payments. Then it has a second sentence that says, if you die after the annuity starting date, your beneficiaries get the 120 payments. It never discusses what happens in any other factual pattern, including the one that you have here where you've elected retirement, and pursuant to an established company practice, you're waiting to collect the annuity for several weeks and die in the interim. And the reason I would submit, Judge, that it doesn't address it is that the settler never thought of it. The settler always considered it a guaranteed payment for 10 years, and that issue was never raised. Now, to answer your question more directly- Well, that may be, again, if one confines the review simply to the one section cited. But there is certainly other material in the plan and the summary that supports the position taken by the administrator. And that's where- Well, given the fact that we know there is other material that supports the plan's position, I'm wary about drawing the conclusion that you just suggested, that the settler never even considered this issue. For example, I mean, on page 30 of the red brief, there are summary. And those quotations are totally consistent with and supportive of the conclusion that the administrator came to. So I don't think we can say, gee, the settler never thought of this situation. The settler may have done a lousy job about articulating it, but I don't think we can conclude that the settler didn't even think about it. Well, I think there are a couple of issues with that. One is that I believe the more persuasive evidence, and it's repeated multiple times in what is communicated directly to Mr. O'Shea when he's selecting his benefit, comes right out and says, you have 10 years of guaranteed payments. If you die before the end of the guarantee period, your beneficiaries get it. And I believe to the extent that there's conflict between those two summary plan descriptions and similar statements in the retirement plan packages that favor Mr. O'Shea's determination or explanation and UPS's interpretation, I would suggest that under sort of adopting a common law of contracts that underlies a lot of ERISA plan interpretation, it needs to be determined against the drafter who created this ambiguity and this ambiguous circumstance. And that in turn, of course, and I'll return to that briefly, but that then gets you into this very question of the estoppel claim and the dismissal of count two, which is exactly that issue. Before you get to that, can I just clarify what the legal argument of how we're supposed to go about interpreting it is? If the term is ambiguous on its face in 5.4, and if I get to 5.4, does that mean that the materials cut against each other? So they kind of reinforce the ambiguity. Is the plan administrator at that stage able to do kind of what an agency could do under Chevron and say, look, there's an ambiguity here, but our resolution of this by reading all those materials together, in their view, means that we did contemplate it. There might have been an overall drafting, but the best understanding is that the plan goes against the claim that the claim is making. Is that a permissible thing for the plan administrator to do? I think the answer is no, and I think there are two reasons. The first is that what you're creating there in that situation is the claims administrator, the plan administrator, basically making an ad hoc determination on a given claim. ERISA dictates, as well as trust law, but ERISA itself expressly dictates that the plan has to be interpreted essentially in favor of beneficiaries, that their obligations are the highest known to law. They're basically to be interpreted, the plan documents, in the manner that benefits the beneficiaries. They're sitting there as a trustee on their behalf. And to take a position that our ad hoc, it's, you say that the face of the 5.4 is not determinative, so you have to look at more materials. If those materials aren't crystal clear, but there is a cogent argument that can be made that the balance of them tilt in favor of the plan, the plan did contemplate how this benefit would play out, and the best understanding of all those materials is X, and it favors the plan, do we owe that any deference at all? Or is it essentially what you're saying, once the face of the 5.4 provision is unclear, then unless there's just crystal clear evidence beyond that, claimant wins? I think what I'm saying is, and here's where we have to take a half step back, the problem with 5.4 and the hypothetical, and the problem with the fact that it was never raised in the administrative appeal process is, if it's raised in the initial denial letter, we can ask, we can say, wait a minute, the summary plan description contradicts 5.4, for instance. The plan amendment, years later, saying, oh yeah, you're right, from now on, we're going to pay people in that circumstance, contradicts it. Why did you put that in? Why did you make this change? What was the draftsmanship history? Go talk to the people. We can't do that in this case, obviously, because we're limited to the administrative record. We can't give the evidence necessary to address, to be honest. No, but one thing we could do is remand, I mean, you would say that this was an arbitrary interpretation, it wouldn't be a necessary claimant wins, but I think what I understood you to be saying to Justice Souter was that because there's an ambiguity here, and because there's nothing clear for the plan once you get beyond the ambiguity, look at the other materials, you win because we must construe the plan in your favor. And I'm trying to figure out why that would be. Yes, and I think what my response to that in a more full form is that it would be a multi-step answer, which is exactly what your Honor suggests. It would need to be remanded so that we could ask for this information in this investigation, and then present the entirety of the evidence. Now, hypothetically, if it's an absolute tie, I suppose discretion means the plan administrator's tie wins. I have trouble in the real world picturing an absolute tie once they're asked to investigate and provide this evidence. And then that circles back, and I'll briefly speak on the point of capture. Just to pin down your last answer, so you're not really requesting a win here. You're requesting a remand. Well, I think that they've waived 5.4, and I think 5.6 absolutely does not apply to Bard here. 5.6 is literally an adaptation, an adoption of the plain language of the Retirement Equity Act of 1984. There's no evidence and no basis to find it applies here, or the settler meant for it to apply to anything else. But I'm having trouble following why it wouldn't apply here. I mean, regardless of its origin, it says what it says, and so seemingly, if we ignore the origin of it, factually, it's applicable. 5.6 never actually says you don't receive the annuity if you die before the annuity starting date. It simply says if you pass before the annuity starting date, there's a joint survivor benefit. So the question under trust law is what do they mean by that language? But it deals with the if you pass before. I mean, that's the one provision that deals with if you died before the start date, which is clearly defined. Well, I think the answer to that, Your Honor, goes back to under trust law in ERISA. It's arbitrary and capricious for the plan administrator to apply an interpretation that's different than what the settler intended. And the only rational interpretation of 5.6, since it's literally lifted verbatim from a statute requiring a joint survivor annuity only for circumstances in which a spouse is a widow or a widow survives someone who never collected and didn't start collecting his benefit, is that it's limited and was intended to be limited to that circumstance. There's no evidence, in my view, in this record that it was meant to have a broader purpose. And frankly, that's why the district court, as well as UPS, are focused on 5.4, because 5.6 is a very sketchy connection. I thought the plan justified it based on the interplay between 5.4 and 5.6. There is a linkage. I agree. And it's fair to say that... I take it what that means is they say 5.4, when read with 5.6, which has the language that specifically contemplates not the benefit that follows from a death before in the retirement date, but the circumstance of death before, and then says, here's the benefit that falls in that circumstance, the interplay of that specific provision dealing with that plus 5.4 together, I thought the plan's argument was when you read those together, the natural reasonable conclusion is that's the benefit and the only benefit you get in that circumstance, and then 5.4 otherwise tells you what happens. I think that's a fair statement of their argument. What's unreasonable about that conclusion? Because I find, with understanding what you were saying, is if you can deduce a reasonable reading of the plan, we're supposed to defer to it. And Your Honor, for my answer to your question, it comes back to that same problem that 5.4 was never raised, so we don't have a record to understand how they were really meant to be interpreted together. And without that record, we can't tell you whether it's arbitrary and capricious for them to interpret it in this manner, and it's something they've just decided as an exigency here to use. Thank you. Thank you, Your Honor. May it please the Court, I'm Tim McDonald on behalf of UPS Retirement Plan. Let me start with the last point, because there's been, that's really the focus of plaintiff's argument, is that somehow even whispering 5.4 is improper. That is absolutely, categorically against this circuit's precedent. This circuit does not have a magic words rule. It has a rule that says, was the issue sufficiently presented so that the other side knew what they should target their presentation to? Well, in the denial of the claim, 5.4 wasn't mentioned. Great point. And if I may explain, 5.6 was mentioned. Then they appealed. They didn't rely on any provision in the plan. They didn't say 5.6 is wrong. They never intended to argue that the plan didn't apply. Please read their administrative submissions, which in the record fall roughly between A5 and- But isn't the burden on you to explain why the benefit was denied? It is, and 5.6 alone is sufficient because 5.6 is the only plan provision that says what happens if someone dies before. And SMART, the First Circuit's opinion in SMART says that you use the same type of statutory canon of expressio unio, expressio, I'm going to get it wrong. I think I did get it wrong. Unis. Thank you. You use that with respect to plan terms as well. And if there's only one that says what happens before, you don't need to then list, and the following things do not happen. Okay? Now, let's think about how a plan is structured. Before there's a plan, there's no benefit at all. There is no federal requirement to provide a retirement benefit. So the plan starts from the proposition of the only thing that is given is what's listed in the plan. And if it's not listed, it's not in the plan. So what they're trying to do is flip it and say, unless you eliminate everything, which would take, if you look at the record, a 150-page plan document and make it a 600-page plan document, they're saying, unless you eliminate every possibility, we win. There is no case law in their brief that says that. I think it just depends on what 5.4 says, to some extent, for your expressive argument to work. Because 5.6, although it deals with a specific circumstance, it's almost too specific because it also tells you this is the specific thing that happens when you have a spouse. If you don't have a spouse, why would you care about 5.6? So then the question is, okay, what does 5.4 say? As I understand it, they say that first sentence in 5.4 at least starts to raise a question as to whether if 5.4 alone is what you're looking at, do we know what happens in this circumstance? And I don't quite see how 5.6 tells you, yes, we know that we weren't supposed to give you a benefit simply because we provided for what happens in the case when you had a spouse. Okay, well, what happens when you die in that circumstance and you don't have a spouse? 5.6 doesn't tell us. And I take it Claimant's argument is nothing in 5.4 tells us clearly what to do. Actually, if you look at, they focus on the first sentence in 5.43 because the second sentence is fatal to their argument. The second sentence says, and I will loop back to why that can be true. Just before you get into why it's one of them, I take it on that construction of 5.4, though, the plan has not weighed in with an explanation. The plan has responded to plaintiff's arguments. The plan administrative committee never had anybody raise 5.4 and say, wait a minute, this contradicts 5.6. So you're right. Nobody ever gave the plaintiffs, even though they had counsel. But that would be a waiver point. But I take it just if I understood what he was saying about how we're supposed to construe the plan, it would be hard for us to affirm under a construction of 5.4 that the plan never offered. Not at all. Because you don't need a construction. You just need to look at the plan language. One says what happens before, and that's 5.6a. It's the only benefit in the whole plan, only provision that gives anybody anything if anybody dies before. To your question, what happens if somebody dies before and they're not married? A lot of people. That happens and there isn't a benefit because the plan doesn't provide it, okay? So in other words, if you die at 48 and haven't put in your retirement papers and you're single, there's no retirement benefit for anybody. So the plaintiff has it flipped. The plan only says when you get things. Now let me go back to your 5.4d3. Before you do that, may I just interpose one question to make sure I understand you so far? Sure. You closed by saying this is the only provision that provides what happens in this circumstance. As I understand your brother's argument, you can't argue that and we can't consider it because we cannot look at other contextual portions of the plan that explain or justify the statement that you have made. You clearly don't agree with him on that. Yes. So let me at this point pose the question before you go on to Part 2 here. What can we look at beyond what the plan cited to determine whether the conclusion the plan drew from that citation was overall a reasonable conclusion? Great question. And Judge Barron, this answer is going to take me about a minute, so if I can precisely remember your question, I may need help. If you look at basically four decisions this circuit's law will tell you what to do. Glista is the first one, and then there's Dukawich, which is another one, and then Neubauer, which they rely on, and Terry. Those four cases basically say if it's a totally new basis, if you are saying before I say you didn't meet the vesting requirements of the plan, and now I say you met the vesting requirements but you also didn't have sufficient service to get this particular benefit, that's improper. But here the committee has always said the same thing. You died before the annuity start date, therefore this is the only benefit available. Its decision has been consistent throughout. In that circumstance there's no limitation on what you can look at. In Neubauer you even had the plan referring to the wrong section in the letter, and the court said yeah, but the argument they're making, it's all basically the same. And so the fact that you might argue different plan provisions doesn't change anything. Okay, you've answered my question. I don't want to lose the second part of Judge Barron's question. The last point I was going to say on that answer, Justice Souter, was Judge Thompson asked a very good question about isn't it a burden on us to explain it. Largely, Your Honor, but it's a cooperative process. We respond to the arguments made by the applicant. In this case, the applicant never argued a single provision of the plan applied, and then in the complaint we were ambushed with all of a sudden four or five new plan provisions, which their lawyer, a different lawyer than Mr. Rosenberg, their lawyer had never argued a single one. So I agree with you, Your Honor, there is a burden on us to meet the claims regulations requirements, but here where nobody's arguing that any other plan provision is in conflict with 5.6, we've met that burden. Can I just understand the logic of this? It may be right, but here's a puzzle about it which just seems a little inconsistent with the notion of us deferring to the plan. Suppose 5.6 didn't speak to a death benefit at all, and that's what they relied on. The plan relied on 5.6, just a clearly irrelevant provision. But their position consistently all along is the one that they take now, which is if you die before, there's no benefit. I take it you'd say, well, they've always taken the same position, and 5.4 always supported that position, so we could affirm the plan by reference to 5.4 even though the plan only relied on 5.6, which doesn't speak to death benefits at all. Would that make any sense? When you're talking about death benefits, the entire, all of those I'm giving a hypothetical in which the plan picks a clearly irrelevant provision, but takes the position which they have consistently taken, that you lose. What you're effectively saying is we can scan the plan and affirm on any ground that we find in the plan that supports the position they take, no matter how arbitrary their initial defense under the plan of that position was. That just doesn't seem to me like deference. That sounds like just a no-vote review. If that's how you take my argument, I apologize. Why is that not what you were saying? Here's what the language is, and I'm quoting from Neubauer. If the participant has a sufficiently clear understanding of the administrator's position to affect review, to permit effective review, the position by the administrator, regardless of which provision it is, 5.6a or their provision 5.4d3, has always been you died before the annuity start date. But what I take Clayman is saying is why does that matter? And they would like to know from the plan why the plan thinks that matters. And if the plan's answer is 5.6, and the claimant says I just read 5.6, I don't see what that has to do with me. I don't have a spouse. Then sufficient to know what the plan's reason would be would be something like 5.4. But you're saying they don't have to even say that. 5.6 is the only time that it ever says about any benefit before. And so that's the takeaway. Regardless of whether it's talking about spouses or not, there's no other provision that talks about before without spouses. So that's the import that you take from 5.6. And I'll note that when they amended the plan, they amended 5.6. They didn't amend 5.4. So the plan has What if they gave a without citation to any section at all, simply gave as a blanket statement you died before retirement. Therefore, the beneficiaries whom you had designated take nothing. Would you under that case say that in effect on appeal, we may consider any portion of the plan documents that might support that conclusion? If they cited absolutely nothing, there'd be a different issue, Your Honor, under the claims regulations, which can be found at 29 CFR 2560.5031. They have to at least point to what they think is the prevailing provision in the plan. And here they did that. But it doesn't require them to cite to every potential citation that would support them. And so, Your Honor, if they cited nothing, I would say there may be a technical violation of the claims regulations. Whether or not that would permit a substantive remedy is a different issue that's not more brief than this case. If you look at their overall take on the arbitrary capricious or abusive discretion standard of review, they completely eliminate it when you really listen to what they say. No deference whatsoever unless there's a tie. There is not a single case in this circuit that says that. And let's look at D&H Therapy because it's a wonderful case for us. D&H Therapy looks at the language and says, let's see whether or not the reading is reasonable. And they say, plaintiff, you lose because you're, I'm sorry, the plan lost that one because the construction would render certain words surplusage. Their construction would render, as the district court noted, words in 5.4 D3 surplusage after the annuity start date. The guarantee doesn't kick in until after the annuity start date. They can't persuade you or anybody else without taking those words out of the plan. D&H Therapy would say, we win on that point. Let me get to the second, count two, and the release. The release was signed before there was any, before Mr. O'Shea died, but after the alleged misrepresentations that plaintiffs rely on. They say that their claim is not one for breach of fiduciary duty, but in the complaint they ask for the remedy of surcharge. And the Supreme Court of the United States has said surcharge is a remedy. That's in paragraph 65 of the complaint. Surcharge is a remedy for breach of fiduciary duty. If you have a breach of fiduciary duty, you have a three year statute of limitations under 291113 subsection 2. They don't dispute that they have all the facts. Indeed, a lawyer writing a letter on their behalf three and a half years before the complaint. So there's no question that in addition to the release language being applicable, the plaintiff would have also lost on a statute of limitations ground. Can I ask you about the equitable claim just for a moment? Yes. If the, if I understand it, the equitable claim has to be contractual in nature in order for it not to be time barred? The equitable claim, it could not be an equitable claim. Well, but I think they cite some authority that suggests that it can be an equitable claim, but for statute of limitations purposes, like promissory stop or such, count as contractual for purposes of whether it's time barred. My answer is about half a minute, and I see I'm coming up on my time. If I can ask you a question. They cite a number of cases where there's an illegal plan term. Lorenzano, illegal plan term. Boyd was an illegal plan term. The case out of the Western District of Wisconsin, illegal plan term. So in those cases, there wasn't reliance. There was no equity. They just said you simply can never write the plan this way. And so in those circumstances, a breach of contract statute of limitations makes sense. This is not that case. There's nobody saying you can't write the plan this way. Instead, they're saying so and so misled me, or the summary plan description, which as we've argued is consistent with the plan language, misled me. And so for that logic any equitable claim that they might have is time barred? Yes, because the cases that they cite do not rest on reliance or surcharge. They basically are you have an illegal contract. And for those, you don't have a fiduciary duty. The settlor is drafting the contract, not the fiduciary. So it's not a breach of fiduciary duty claim. Fiduciaries come into play when you're talking about handing out summary plan descriptions and information. That's why one looks at contract and one looks at misrepresentation with a breach of fiduciary duty standard. If there are no other questions, I appreciate the court's time. Thank you.